UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KAHDAFFIE GREEN | No. 24 CR 566-1<br><br>Judge Rebecca R. Pallmeyer |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On the morning of December 6, 2023, defendant Kahdaffie Green and his three co-defendants brazenly robbed three electrical workers installing natural gas pipeline at gunpoint. The robbery occurred in broad daylight near the intersection of 97th Street and Dr. Martin Luther King Drive. Two of the victims were actively working with heavy machinery—and the third victim was retrieving tools from his work van—when Kahdaffie Green drove up in a stolen Jeep Cherokee with his three co-defendants in the car. Marquise Ramyyeh, Jahjuan Green, and Chaqwon Birden exited the Jeep; all three pointed guns directly at the victims. Ramyyeh and Birden dragged a RIDGID camera and a Digitrak locator box, with a combined total value of approximately $25,000, into the Jeep. Kahdaffie Green then drove off with the stolen equipment and his coconspirators in the Jeep.

The gravity of Kahdaffie Green's actions, as well as the need to protect the public and deter Kahdaffie Green and others from similar conduct, warrant a significant sentence. Kahdaffie Green was on parole for a $46,000 theft of a Prada store when he committed the instant offense. These were both high-value thefts. It is apparent from Kahdaffie Green's criminal history that he has thus far been

undeterred from engaging in risky thefts of high-value targets, including while in possession of firearms. The government therefore requests that the Court sentence defendant to 135 months' imprisonment. A 135-month sentence will provide justice for defendant's victims and is sufficient but not greater than necessary to satisfy the goals set forth in the Sentencing Guidelines and 18 U.S.C. § 3553(a).

## I. PROCEDURAL HISTORY

On December 9, 2024, a federal grand jury returned an indictment charging Kahdaffie Green with conspiracy to commit robbery, in violation of Title 18, United States Code, Section 1951(a)(1) (Count One); robbery, in violation of Title 18, United States Code, Section 1951(a)(1) (Count Two); one count of brandishing a firearm in relation to that robbery, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Count Three); and one count of felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1) (Count Four). Dkt. 1. Three other codefendants were charged in the same indictment. On November 20, 2025, Kahdaffie Green pled guilty to Counts Two and Three of the indictment. Dkt. 147-148.

## II. GUIDELINES CALCULATIONS

The government has no objections to the PSR prepared by the United States Probation Office ("Probation") and agrees with the offense level, criminal history, and advisory Guidelines calculations therein. Specifically, the government agrees with Probation that the total offense level is 18. PSR ¶ 40. The government also agrees with the criminal history calculations set forth in the PSR (PSR ¶ 54), and asserts that defendant has eleven criminal history points, and his criminal history category

is V. This is a departure from the plea agreement, which calculated the defendant's criminal history points as nine and his criminal history category as IV. The plea agreement did not include one criminal history point for a November 4, 2020 conviction for arresting law enforcement in Jackson County Superior Court, Seymour, Indiana, for which Kahdaffie Green was sentenced to 30 days' jail. Kahdaffie Green receives one criminal history point for this conviction pursuant to § 4A1.1(c). PSR ¶ 50. In addition, Kahdaffie Green receives one criminal history point pursuant to §4A1.1(e) because he committed the instant offense while on parole in Case Number 22 CR 0331601 in the Circuit Court of Cook County. PSR ¶ 53.

With a total offense level of 18 and a criminal history category of V, the advisory sentencing guidelines range is 51 to 63 months' imprisonment on Count Two, in addition to any supervised release, fine, and restitution the Court may impose. PSR ¶ 107. Defendant is also subject to a mandatory minimum sentence of 84 months on Count Three, which must be served consecutively to the sentence imposed on Count Two. *Id.* ¶ 105-106.

## III. THE SECTION 3553(a) FACTORS SUPPORT A SENTENCE OF 135 MONTHS' IMPRISONMENT

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Here, the Guidelines range is high. But it is high for a reason. It is high because defendant stole valuable equipment. It is high because defendant committed an extremely violent and dangerous crime that put several innocent lives in peril, and then caused numerous police officers to go on a manhunt looking for him. In short, the Guidelines range is

high, but a sentence of 135 months is appropriate given defendant's complete disregard for human life, his escalating criminal behavior, the need to protect the public, and the need to deter defendant and others from committing similar offenses.

### A. The Nature and Circumstances of the Offense Justify a Significant Sentence

The seriousness of defendant's offense cannot be overstated and alone warrants a significant period of incarceration. Defendant's crime was brazen and violent. Motivated only by his own greed, defendant showed a complete disregard for human life. A significant sentence is necessary to ensure that defendant never again commits a violent crime and puts innocent lives at risk. When considering only defendant's extreme conduct in this case, a sentence within the advisory Guidelines range would be easily justifiable.

Kahdaffie Green attempts to minimize the seriousness of his crime by arguing in his sentencing brief that his "involvement in the crime was far less dangerous" because he "remained in the vehicle, brandished no firearm and confronted no victim, and personally took nothing at the site." Dkt. 189 at 6. Though Kahdaffie Green did not personally brandish a firearm, he sat in the driver's seat and watched as his codefendants pointed guns at victims and dragged equipment back to the car. Moreover, Kahdaffie Green was involved in the planning and execution of this dangerous crime. Cell site for the three days proceeding the robbery, from December 3, 4, and 5, 2023, shows that Kahdaffie Green's phone connected to towers in the area of the robbery location on those days, which is consistent with K. Green casing the robbery location. The natural gas workers had been working on Martin Luther King

Drive for weeks prior to the robbery—and Kahdaffie Green drove by them on at least three occasions prior to the robbery, as he was planning this crime. Kahdaffie Green's phone also contained a photo of a dark-colored Jeep with tinted windows, dated the night before the robbery on December 5, 2023, at 11:24 p.m., that is similar to the stolen grey Jeep he used to commit the robbery.

Moreover, a picture from Kahdaffie Green's phone taken the night before the robbery shows Kahdaffie Green – in the clothes he wore to commit the robbery – with the same Smith & Wesson rifle that his co-defendant Chaqwon Birden brandished during the robbery, as shown below:



*Image from Kahdaffie Green's Phone depicting Kahdaffie Green with Smith & Wesson rifle on counter*

Kahdaffie Green's statement that "[h]e at no point possessed a gun" (Dkt. 189 at 6), suggests he had no association with the robbery weapons—though he was seen with the very same weapon used by Birden in the robbery the night before the robbery.

### B. A Significant Sentence is Necessary to Afford Adequate General Deterrence

"Sentencing judges must consider, among other things, the need for a sentence 'to afford adequate deterrence to criminal conduct.'" *United States v. Arroyo*, 75 F.4th 705, 708 (7th Cir. 2023), quoting 18 U.S.C. § 3553(a)(2)(B). "The idea of general deterrence, put simply, is that the longer the sentence, the more it will discourage similar criminal conduct by others." *Id.*

A significant sentence is warranted here to afford adequate deterrence for the public. Defendant's robbery was the second high-value robbery that defendant committed in the course of less than a year. It is important to send a message to the community that although valuable equipment and merchandise hold the allure of being highly lucrative targets for theft, they carry stiff consequences that outweigh any prospect of personal gain. "General deterrence is, after all, an economic theory of punishment: 'Where the profits to be made from violating a law are higher, the penalty needs to be correspondingly higher to achieve the same amount of deterrence." *Arroyo*, 75 F.4th at 708, quoting *United States v. Cavera*, 550 F.3d 180, 196 (2d Cir. 2008). Unlike an impulsive shooting resulting from an argument, armed robberies are pre-planned and lucrative—in less than a minute, defendant and his co-conspirators stole over $25,000 worth of equipment— and a significant sentence will deter future potential robbers who may believe the risks of such a robbery are worth the potential reward.

### C. A 135-Month Sentence Will Address Defendant's History and Characteristics While Providing Just Punishment, Affording Adequate Specific Deterrence, and Protecting the Public

Defendant's history and individual characteristics offer both aggravation and mitigation. Defendant was on state parole for robbery in connection with a high-value retail theft when he committed the instant offense. PSR ¶¶ 51, 53. According to the PSR, Kahdaffie Green was identified as one of the individuals who used force to steal approximately $46,000 in merchandise from the Prada store in Chicago. *Id.* Kahdaffie Green was sentenced to 42 months' imprisonment; he was paroled on July 23, 2023, just five months before he committed the instant robbery. Further, at just 27 years old, defendant has a significant criminal history, with eleven criminal history points and a criminal history category of V.

Defendant's history does offer some mitigation. He had a difficult childhood. His father was not present in his life, and his mother struggled financially to support her children. PSR ¶ 62. Defendant grew up in a violent neighborhood without financial stability. PSR ¶ 71. In September 2023, just three months before he committed the robbery in this case, Kahdaffie Green reports he was struck by "stray bullets" in his side, arm, and back. PSR ¶71. This traumatic incident, as well as defendant's difficult childhood, certainly factored into defendant's choice to commit dangerous, violent crimes. But given that defendant has been the victim of gun violence, it is also aggravating that he would place others in fear of being similarly victimized by committing the instant armed robbery. Defendant graduated from high

school (PSR ¶ 94) and his mother reported that defendant received two partial scholarships to college—which he declined (PSR ¶ 95).

Ultimately, defendant's youth does offer some mitigation and a potential for turning his life around. But defendant's escalating criminal history raises a significant concern that defendant will recidivate upon his release. Defendant was 24 years old when he committed the instant offense and will be 27 years old at the time of his sentencing. According to the United States Sentencing Commission's report *Youthful Offenders in the Federal System*, youthful offenders have the highest recidivism rate of all federal offenders, with defendants sentenced between ages 21 and 25 having a 65.6% recidivism rate.[1] Because of the significant risk that defendant will return to criminal activity upon his release at a relatively young age and the need to ensure he ages out of his dangerous criminal conduct, a sentence of 135 months is needed in order to adequately deter defendant.

## IV. SUPERVISED RELEASE

The government agrees with Probation's recommendation that the Court impose a period of supervised release of three years. The government agrees with the supervised release conditions set forth in the PSR, which are narrowly tailored to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, and ensure that he is engaged in lawful pursuits rather than criminal activity. Given defendant's

[1] United States Sentencing Commission, *Youthful Offenders in the Federal System* (May 25, 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf, at 49 (last accessed April 18, 2025).

history and characteristics, his offense conduct, and the purposes of sentencing set forth in 18 U.S.C. §§ 3553 and 3583, the government joins Probation in requesting that the defendant be required to comply with the conditions of supervised release set forth in the PSR.

## V. RESTITUTION

Pursuant to 18 U.S.C. § 3663A, restitution is mandatory in this case. In his plea agreement, defendant agreed to pay restitution in an amount determined by the Court at sentencing. However, because Company A's stolen equipment was recovered by the police and returned to Company A, the government is not requesting restitution in this case.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to 135 months' imprisonment, to be followed by three years of supervised release. Such a sentence is sufficient, but not greater than necessary, to satisfy the 18 U.S.C. § 3553(a) sentencing factors.

Respectfully submitted,
ANDREW S. BOUTROS
United States Attorney

By: */s/ Emily C.R. Vermylen*
EMILY C.R. VERMYLEN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604